United States Bankruptcy Court
Eastern District of Michigan
Southern Division - Flint

In re:
Thomas McGeathy and
Carolyn McGeathy                                    Case No. 04-30458
              Debtor.                         Chapter 7
_____/                    Hon. Walter Shapero

Tiny Sue McGeathy,
              Plaintiff,

v.                                                  Adv. No.04-03087

Thomas McGeathy,
              Defendant.
_____/

OPINION REGARDING NON-DISCHARGEABILITY OF DEBTS
PURSUANT TO 11 U.S.C. § 523(a)(15)

The issue pending before this Court is whether to except from discharge certain debts arising out of a divorce judgment, pursuant to 11 U.S.C. § 523(a)(15).[1] A complaint to determine dischargeability of a debt is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a) and (b)(1).

I.     PROCEDURAL HISTORY

On February 6, 2004, Thomas McGeathy and Carolyn McGeathy ("co-debtors") filed a voluntary petition under Chapter 7 (Legal Case No. 04-30458). On March 5, 2004, co-

---

[1] As this case was commenced in 2004, all references to the Bankruptcy Code and applicable law in this opinion are to the Bankruptcy Code as it existed prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

debtors amended their schedules to include Tiny Sue McGeathy ("Plaintiff"), as a creditor with a pending claim in the amount of $31,000 (Docket #11).

On June 10, 2004, Plaintiff filed the instant adversary proceeding against her ex-spouse, Thomas McGeathy (referred to individually as "Debtor"), wherein she requests that the Court declare certain debts nondischargeable, including: half the proceeds Debtor received from the sale of a 1973 Silverton Boat Hull; half the proceeds Debtor received from the sale of real property located in Atlanta, Michigan; and the value of an IRA belonging to Plaintiff; all arising out of a divorce judgment (Adversary No. 04-03087).[2] Plaintiff also requests that she be granted costs, interest and attorney fees. Debtor filed an Answer to the complaint generally denying all of Plaintiff's allegations (Docket #2).

On October 14, 2005, the matter was referred to mediation, however, mediation was unsuccessful (see Dockets ##12, 14, 15). The parties filed a final joint pre-trial order and a trial was held on March 1, 2006 (Docket #15). At trial, both parties were represented by counsel and introduced testimonial and documentary evidence to support their respective positions.[3] At the end of trial, the Court took the matter under advisement. The Court also ordered the parties to submit post-trial briefs, with Plaintiff to submit her brief by March 21,

---

[2]All subsequent references to docket entries refer to Adv. No. 04-03087, unless otherwise provided.

[3]The evidence stipulated to by the parties included: (1) Plaintiff's Exhibit #1 - Divorce Judgment dated December 16, 1004; (2) Defendant's Exhibit D - Recorded Copy of Deed transferring property located in Atlanta, Michigan, from Thomas McGeathy to James Berney; (3) Defendant's Exhibit E - Warranty Deed; and (4) Defendant's Exhibit F - Closing Statement. Testimony was obtained from Thomas McGeathy and Tiny Sue McGeathy.

2

2006; and Debtor to respond thereafter by April 4, 2006.[4] Plaintiff filed timely Proposed Findings of Fact and Conclusions of Law (Docket #17).[5] However, Debtor never responded or filed a post-trial brief.

On May 9, 2006, Plaintiff filed a Motion to Adopt its Proposed Findings of Fact Due to Non-response of Debtor (Docket #19).[6] Plaintiff also filed a Certificate of Non-response requesting that the Court enter an order allowing Plaintiff's proposed findings of fact to be adopted pursuant to Fed. R. Bankr. P. 7015 (Docket #21).[7]

II.   FACTUAL BACKGROUND

Plaintiff and Debtor were divorced pursuant to a divorce judgment dated December 16, 1996 ("divorce judgment") (Case No. 96-183303-DO, State of Michigan, Circuit Court for the County of Genesee).[8] In the instant case, Plaintiff argues that Debtor failed to

---

[4]The parties were also ordered by the Court to submit the signature page of the divorce judgment; to submit orders related to any litigation that may have commenced in local court regarding the marital residence located in Flushing, Michigan; a copy of the written Stipulation and Property Settlement Agreement referred to in the preamble to the divorce judgment.

The parties did not submit any documents related to litigation that may have commenced in local court, however, the Court was informed by Plaintiff's counsel at the end of trial, that other than a motion to appoint a receiver, he was unaware of any other court order issued by local court with respect to the marital residence.

Moreover, an audit of the Circuit Court file in the County of Genesee revealed that there were no attachments to the divorce judgment on file (see Docket #17). Thus, the Court's decision in the case at bar will be based solely on the provisions included in the divorce judgment.

[5]Plaintiff filed a certificate of service indicating that Defendant's counsel was notified of the Proposed Findings of Fact and Conclusions of Law filed by Plaintiff (Docket #18).

[6]Plaintiff filed a certificate of service indicating that counsel was notified of the filing of Plaintiff's Motion to Adopt its Proposed Findings of Fact (Docket #20).

[7]Attached as an exhibit is a certificate of service indicating that Defendant's counsel was notified of the filing of the Certificate of Non-response (Docket #21)

[8]Thomas McGeathy was the Plaintiff in the divorce proceedings and Tiny Sue McGeathy was the Defendant.

3

comply with three separate provisions of the divorce judgement.[9] First, Plaintiff avers that Debtor fraudulently cashed out an IRA that was in her name, and subsequently failed to turn over the value of the IRA totaling $2,000. The provisions in the divorce judgment that make reference to IRA's belonging to both Plaintiff and Debtor, state the following:

> 1. The following property shall be awarded as <u>Plaintiff's own, sole, and separate property</u>, free and clear from any claims on the part of the Defendant: . . . . c. The IRA with Jackson National Life which is titled in Plaintiff's sole name. Defendant shall remain as the beneficiary of said IRA.

> Subparagraph 1.c., page 3 (emphasis added) (Plaintiff's Exhibit #1).

> 2. The following property shall be awarded as <u>Defendant's own, sole, and separate property</u>, free and clear from any claims on the part of the Plaintiff: . . . . c. The IRA with Jackson National Life which is titled in Defendant's sole name. Plaintiff shall remain as the beneficiary of said IRA.

> Subparagraph 2.c., page 3 (emphasis added) (Plaintiff's Exhibit #1).

Second, Plaintiff avers that Debtor failed to turn over half the proceeds from the sale of property located in Atlanta, Michigan, totaling $48,632.90. The provision in the divorce judgment that refers to the property located in Atlanta, Michigan, states in relevant part:

> Plaintiff presently owns a one-half interest in real estate situated in Atlanta, Michigan . . . . In the event the . . . . real estate is ever sold, the parties shall equally divide Plaintiff's one-half share of the net sale proceeds. Upon entry of Judgment of Divorce, the parties shall own Plaintiff's one-half interest as Tenants-In-Common.

> Subparagraph 4, page 4 (Plaintiff's Exhibit #1).

Finally, Plaintiff states that Debtor failed to turn over half the proceeds from the sale of a 1973 Silverton Boat Hull, owned jointly by the parties and sold by Debtor for $100.00.

---

[9]Plaintiff also raised the issue of dischargeability with regard to property that Debtor inherited located in Flint, Michigan. Debtor testified at trial that this property was foreclosed upon and he did not receive any proceeds, thus the Court will not consider this issue.

The relevant provision in the divorce judgment that refers to the Silverton boat states that:

> The 1973 Silverton Boat Hull Identification Number: STN25128M73H, which titled in the joint names of the parties shall continue to be titled in the parties' joint names and said boat shall be listed for sale in the Spring of 1997, and sold, and the parties shall thereafter equally divide the net sale proceeds.

Subparagraph 8, page 5 (Plaintiff's Exhibit #1).

Although it is undisputed that Debtor failed to turn over the proceeds from both the sale of the property located in Atlanta, Michigan, and the sale of the 1973 Silverton Boat Hull; Debtor argues that he did not do so because Plaintiff failed to comply with the terms of the divorce judgment. First, Debtor testified that Plaintiff stayed at the marital residence located in Flushing, Michigan, longer than the two years allowed for in the divorce judgment; and never paid Debtor rent during this time. The relevant provision that makes reference to the real property located in Flushing, Michigan, states the following:

> Defendant shall have the right to exclusive possession of the marital home which is situated at 8617 Tim Tam Trail, Flushing, Michigan and she shall have the right to live in the marital home for a period of two (2) years subsequent to the date of entry of Judgment of Divorce . . . . Following the passage of the two year period the marital home shall be forthwith listed for sale, and sold, and the parties shall equally divide the net sale proceeds . . . . If either party fails to pay their one-half of the real estate taxes and/or the homeowners insurance premium, that party's share of the net sale proceeds shall be reduced by the amount of the real estate taxes and/or the homeowners insurance policy premiums which the party was required to pay.

Subparagraph 3, page 3 (Plaintiff's Exhibit #1).

Second, Debtor testified that Plaintiff kept some of his assets located at the marital home, such as computers, personal property, papers, pictures, a generator, tools and other property with an estimated total value of $3,000 to $4,000. Third, Debtor states that at the time of the divorce "he was more than generous as far as money goes." Specifically, he states that he left Plaintiff a large amount of savings and did not take the half he was

5

entitled to, although Debtor does admit, he did so voluntarily. Finally, Debtor testified that Plaintiff also received a vehicle and Debtor was left to find his own place to live.

II. DISCUSSION

    A. DISCHARGEABILITY OF NONSUPPORT DIVORCE DEBT UNDER 11 U.S.C. § 523(a)(15)

Congress created an exception to discharge for marital obligations such as property settlement agreements, in order to "uphold a state court's effort to effect economic justice between parties to a marriage." In re Crosswhite, 148 F.3d 879, 887 (7th Cir. 1998); see H.R.Rep. No. 103-835 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3363. Specifically, 11 U.S.C. § 523(a)(15) renders nondischargeable marital property settlement debts that are not of the kind described in § 523(a)(5), and are incurred by the debtor in connection with a separation, divorce decree, or other order of the court of record or determination by a governmental unit. 11 U.S.C. § 523(a)(15) states that a marital debt that is not in the nature of alimony, maintenance, or support, is nondischargeable unless debtor is able to prove that one of the following exceptions applies, either:

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15)(A), (B).

Pursuant to § 523(a)(15), a creditor, and in this case Plaintiff, bears the initial burden of establishing that the debt is not in the nature of alimony, maintenance, or support; and that the obligation actually arose in connection with a divorce or separation agreement. In

6

the instant adversary case, the parties agree that this is an action properly under 11 U.S.C. § 523(a)(15) and stipulated to the admission of the divorce judgment.  Thus, pursuant to § 523(a)(15), the burden shifts to the Debtor to show that either he is (1) unable to pay the debt, or (2) a discharge of the debt would result in a benefit to the debtor that outweighs any detrimental consequences to the creditor-spouse.  In re Smither, 194 B.R. 102, 106 (Bankr. W.D. Kentucky 1996); see Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654 (1991). Essentially, "[t]he debt will be dischargeable if paying the debt reduces the debtor's current income below that necessary for the support of the debtor and the debtor's dependents." Carrol v. Carrol (In re Carroll), 187 B.R. 197, 200 (Bankr. S.D. Ohio 1995).

(1)    Factors used to Determine Debtor's "Ability to Pay"

In determining whether a particular debtor has the "ability to pay" a marital debt, a majority of courts utilize 11 U.S.C. § 1325(b)(2)'s "disposable income test" in analyzing the Debtor's ability to pay pursuant to § 523(a)(15).  Hammermeister v. Hammermeister (In re Hammermeister), 270 B.R. 863, 877 (Bankr. S.D. Ohio 2001).  Under this test, the Court would consider numerous factors, including:

> (1) debtor's "disposable income" as measured at the time of trial; (2) presence of more lucrative employment opportunities which might enable debtor fully to satisfy his divorce-related obligation; (3) the extent to which debtor's burden of debt will be lessened in the near term; (4) the extent to which debtor previously has made a good faith effort towards satisfying the debt in question; (5) amount of debts which a creditor is seeking to have held nondischargeable and repayment terms and conditions of those debts; (6) value and nature of any property debtor retained after his bankruptcy filing; (7) the amount of reasonable and necessary expenses which debtor must incur for support of debtor, debtor's dependents, and continuation, preservation, and operation of debtor's business, if any; (8) the income of debtor's new spouse, as such income should be included the calculation of debtor's disposable income; and (9) any evidence of probable changes in debtor's expenses.

Id. at 878.

Bankruptcy courts in a number of jurisdictions have also found that it is appropriate to consider all sources of income that flow into Debtor's household, including in the instant case, the monthly income received by Debtor's brother as a result of his disability. Beiderman v. Stoodt (In re Stoodt), 302 B.R. 549, 557(Bankr. N.D. Ohio) (where the Court held that "no matter the source of any income - e.g. government assistance, help from family members and/or friends - it must be reported"); Koons v. Koons (In re Koons), 206 B.R. 768, 773-74 (Bankr. E.D. Pa. 1998) (where the Court held that all income of a debtor's immediate household is relevant to debtor's ability to pay); Halper v. Halper (In re Halper), 213 B.R. 279 (Bankr. D. N.J. 1997) (where the Court stated that consideration of all income that flows into Debtor's immediate household is relevant to a determination of debtor's ability to pay"); but see In re Willey, 198 B.R. 1007, 1014-15 (Bankr. S.D. Fla. 1996) (where the Court focused only on the debtor and creditor and did not consider a spouse's or companion's income). In determining whether it is appropriate to consider the income of a co-habitant, courts consider factors such as the period of time the individuals have lived together and the degree to which they have commingled their assets. See In re Crosswhite, 148 F.3d at 889; see also Dunn v. Dunn (In re Dunn), 225 B.R. 393, 401-02 (Bankr. S.D. Ohio 1998). "The determination regarding the inclusion of such income is fact-driven, and is left to the sound discretion of the trial judge." Miller v. Miller (In re Miller), 2002 WL 31957422 (Bankr. W.D. Ky. 2002).

A close analysis of the nature and permanence of the relationship between Debtor and his brother leads this Court to conclude that Debtor and his brother's income totaling $1,100.00, and expenses are closely intertwined. Thus, the Court believes it is appropriate

8

to include the income of Debtor's brother for the purpose of calculating Debtor's ability to pay. Specifically, Debtor testified that his brother was discharged from the armed services; suffers from a mental disorder and is unable to work; and is living with Debtor and his current wife permanently. There are no formal documents granting Debtor guardianship of his brother, however, Debtor testified that he provides his brother with food and pays for any other necessary expenses he may have. The only expense that Debtor stated is not completely covered by the benefits his brother receives, include some medical expenses, but Debtor failed to provide evidence as to the amount of such expenses.

In finding that it is proper to include Debtor's brother's income, the Court also finds that Debtor has failed to establish that he is unable to pay the debt owed to Plaintiff in the amount of $26,366.90 (Docket #10).[10] An analysis of the evidence presented revealed that Debtor has never made a good faith effort toward satisfying the debt, even though Debtor's monthly income has increased substantially from $2,450, at the time of the filing of the bankruptcy petition, to $4,631, his income at the time of trial.[11] This amount includes Debtor's pension ($2,131.00 per month); net income working for Debtor's brother ($300.00 per week); wife's income ($200.00 per month); and income of Debtor's brother ($1,100.00 per month)[12].

---

[10] The amount includes the following: (1) $24,316.90, which is one half of the net proceeds from the settlement received by debtor on the real property located in Atlanta, Michigan; (2) $2,000, the value of Plaintiff's IRA; and (3) $50.00, which constitutes one half the net proceeds of the Silverton boat (Docket #17, page 3, Plaintiff's Proposed Findings of Fact).

[11] The court takes judicial notice of Debtor's Schedules including Schedule I, which reflects a monthly income totaling $2,450; and monthly expenses totaling $3,171 (Docket # 1).

[12] Debtor's wife earns this money caring for Debtor's brother, who suffers from schizophrenia and receives federal benefits as a result of his disability.

9

Moreover, Debtor's testimony revealed that his expenses at the time of trial had decreased from $3,171, on the date of filing of the bankruptcy petition, to approximately anywhere between $2,948 and $3,073 each month. Debtor's monthly expenses include: (1) Rent ($1,060); (2) Heat/Electricity ($200 - $275); (4) Cellular telephone ($90); (5) Satellite television ($48); (6) Food (approximately $400 - $450); (7) Clothing ($300); (8) Laundry/dry cleaning ($80); (9) Non-paid medical expenses ($50); (10) Car repairs/gas/oil ($300); (10) Church donation (approximately $80),[13] (11) Other car expenses ($340)[14]. Since Debtor's income totals $4,631, and his expenses range between $2,948 and $3,073 each, Debtor has disposable monthly income ranging from $1,558 to $1,683 each month, which the Court finds is more than sufficient to pay off the debt owed to Plaintiff, within a reasonable amount of time.

The Court also makes the following evidentiary findings based on the testimonial and documentary evidence presented by the parties. First, the Court finds Debtor's testimony regarding the IRA's to be unpersuasive. Specifically, the divorce judgment is clear in its language that there was one IRA in Plaintiff's name and one in Debtor's name, and each of them would remain the beneficiaries of the other's IRA. Neither party contested the validity or accuracy or completeness of the divorce judgment, thus the Court will rely on its plain language. In so finding, Debtor's testimony that he did not cash out Plaintiff's IRA, but simply cashed out two IRA's that were only in his name, is inconsistent with the divorce judgment. What necessarily follows is that one of the two IRA's Debtor cashed out was the

---

[13] Debtor testified that he gives the Church a donation of $20 each week.

[14] Debtor owns two vehicles: (1) 2002 Van; and (2) 1988 Chevy pickup.

10

one belonging to Plaintiff, and therefore the Court does find that pursuant to the divorce judgment, Plaintiff is entitled to the value of her IRA, or $2,000, as argued by Plaintiff.[15]

Debtor's testimony regarding the reason he failed to turn over to Plaintiff the proceeds of the sale of the Atlanta, Michigan property, is also unavailing. Although it is uncontested that the Plaintiff stayed at the marital residence longer than the two year period allowed for under the divorce judgment, Debtor failed to provide any evidence establishing expenses associated with the delayed sale of the real property located in Flushing, Michigan, or how he was harmed by Plaintiff's actions or indeed what any rental rate might be. Plaintiff eventually placed the property up for sale; sold the property; and ultimately gave Debtor half the proceeds of the residence sale without apparently making or claiming any deduction for rent (see Defendant's Exhibit F).

Moreover, although Debtor argues that Plaintiff did not pay rent during the time she lived in the residence, most importantly and decisively the divorce judgment did not require Plaintiff to pay any claimed rental expenses. It only states that the party's net proceeds would be reduced if either party failed to pay their one-half of the real estate taxes and/or the homeowner's insurance premium (Plaintiff's Exhibit #1). Debtor has never argued that Plaintiff failed to pay either the real estate taxes or homeowners' insurance premium. Thus, there is no legal excuse for not giving Plaintiff half of the proceeds of the sale or allowable offset.

Finally, the Court finds that Plaintiff's testimony regarding the value of the 1973

---

[15]The Court notes that there was no evidence presented by Plaintiff regarding the value of the IRA, however, since it is Debtor's burden to prove an inability to pay and he did not contest this figure or provide evidence to the contrary, the Court will rely on this amount.

11

Silverton Boat Hull. Debtor purchased the boat in 1986 and according to him it had been in storage for a significant time and had very little worth. Debtor's testimony regarding the condition and the boat's fair market value, were credible. Thus, the Court finds that the sale of the boat for $100.00 appears to be reasonable and the Plaintiff is entitled to half the proceeds of the sale, or fifty dollars ($50.00).

(2) <u>Balancing of Hardships</u>

Debtor also did not establish that discharging the debt would result in a benefit to him that outweighs the detrimental consequences to the Plaintiff. Both the Debtor and the Plaintiff must establish proof of respective detrimental consequences. <u>Patterson v. Patterson</u> (<u>In re Patterson</u>), 199 B.R. 21, 22 (Bankr. W.D. Ky. 1996). <u>See also</u> <u>In re Smither</u>, 194 B.R. at 10 (where the Court held that both debtor and creditor must present evidence regarding the consequences to each if a discharge is granted or denied). In order to make such a determination, the Court in <u>Smither</u> considered a number of factors and compared the standard of living of both parties. Specifically,

> (1) the amount of debt, including payment terms; (2) current income; (3) current expenses; (4) current assets, including exempt assets; (5) current liabilities; (6) health, job skills, training, age and education; (7) Debtor's dependents, notably their ages and special needs; (8) any financial changes that have occurred since the divorce to either party; (9) the amount of debt discharged in bankruptcy; (10) if the creditor may seek relief under the Bankruptcy Code; and (11) if both parties have acted in good faith throughout the course of the bankruptcy and litigation concerning the 11 U.S.C. § 523(a)(15) issue.

<u>In re Smither</u>, 194 B.R. at 111.[16]

Based on the evidence presented by the parties at trial, the Court finds that Debtor's

---

[16] The list of factors are not exhaustive and should be applied on a case-by-case basis. <u>In re Simpson</u>, 336 B.R. 739, 745 (Bankr. W.D. Ky. 2006).

12

financial condition makes it possible for him to make the necessary payments to Plaintiff, without jeopardizing his ability to provide support for himself and his dependents. First, as stated above, an analysis of Debtor's financial condition reveals that he has a substantial amount of disposable income between $1,558 and $1,683, that can go toward paying his obligation to Plaintiff. In addition, Debtor's income has increased since the filing and his expenses have remained stable. Debtor is 58 years old and worked a number of years with General Motors and retired in 1996 with a significant pension.[17] Debtor's pension is supplemented by steady income he receives from working with his brother. Debtor's health is not compromised in any way, thus he is capable of sustaining full time employment. Although, Debtor's dependent brother is mentally disabled and requires some level of care, Debtor's wife takes care of Debtor's brother and receives a small amount of compensation, which allows her to contribute to the household expenses and allows Debtor to work outside the home. Debtor's brother's health expenses are mostly covered by federal benefits received totaling $1,100.[18] Co-debtors currently rent a home, thus they do not have to pay a mortgage or other expenses, such as property taxes. Moreover, Debtor received a discharge pursuant to the current bankruptcy case, "thereby providing Debtor with a fresh start free of dischargeable debts." See In re Carroll, 187 B.R. at 201.

An analysis of Plaintiff's financial condition reveals a different picture. Although it

---

[17]The Court takes note of the fact that the amount of money he receives from his pension is likely to decrease once he reaches the age of retirement and begins to collect social security benefits, however, Debtor failed to present any evidence regarding the amount of the decrease, if any.

[18]The Court takes note of the fact that Debtor also testified that his stepson is currently residing with him and his wife and brother, after suffering injuries in a construction accident. However, there was little evidence presented regarding his financial and health conditions; whether he will be receiving benefits due to his disability; and whether he will be living with the co-debtors on a permanent basis. Thus, the Court will not consider him a dependent.

13

appears that Plaintiff has more assets, including a home, a car, and furniture and appliances worth approximately $7,000, the only income Plaintiff receives is the social security disability benefits totaling $1,600 each month.[19] Plaintiff is 62 years old and is currently unemployed. She has been disabled since 1986 when she suffered a work-related injury. Plaintiff did not present evidence at trial regarding the amount of necessary expenses she incurs, thus the Court cannot assign a number to them. However, the Court does conclude that the amount that Plaintiff earns each month, as compared to Debtor, is likely to be used to cover any and all necessary expenses, the mortgage, as well as, expenses attributable to the home.[20]

Finally, the Court finds that upon review of all the facts and circumstances of this case, discharging Debtor's obligation would simply provide Debtor "with additional disposable income to 'use at his discretion,'" while avoiding his marital debts. Id. This is "not the type of benefit that § 523(a)(15)(B) sought to protect." Id. Thus, the Court finds that the benefit of a discharge to Debtor does not outweigh the consequences to the Plaintiff.

(3)     Attorney's Fees under 11 U.S.C. § 523(a)(15)

A final matter concerns a request by Plaintiff for attorney's fees and costs. As stated by the Court in Marsh, no general right to recover attorney's fees exists under the Bankruptcy Code." Marsh v. Marsh (In re Marsh), 257 B.R. 879, 883 (Bankr. W.D. Tenn. 2000) (citing Renfrow v Draper, 232 F.3d 688, 693 (9th Cir.2000)); see also Ford v. Baroff

---

[19]Plaintiff testified that she owns a home that is worth approximately $71,000 with a mortgage of $68,000. The vehicle Plaintiff has is a 1997 Buick Roadmaster obtained through the divorce, and which Debtor makes no monthly payments.

[20]The Court takes note of the fact that Plaintiff filed a voluntary petition under Chapter 7 in 2002 and received a discharge on March 31, 2003 (Docket #7, Legal Case No. 02-34286)

14

(In re Baroff), 105 F.3d 439, 441 (9th Cir. 1997). However, a prevailing party may be entitled to an award of attorney's fees if state law issues are litigated in the bankruptcy court proceedings, and if they are, fees are only awarded to the extent that the fees were incurred litigating the state law claims. Id. In the instant case, the divorce judgment did not provide for the payment of attorney's fees, and no state law issues were litigated by the parties. Thus, this Court denies the award of attorneys fees and costs.

III.  CONCLUSIONS

For the reasons stated herein, the Court finds that the debt owed to Plaintiff and set forth in the divorce judgment, in the amount of $26,366.90, is not dischargeable pursuant to 11 U.S.C. § 523(a)(15). The Court further finds that Plaintiff is not entitled to an award of attorney's fees and costs, in accordance with the Bankruptcy Code. A judgment in accordance with this opinion will be entered separately.

**Entered: August 31, 2006**

                                                    **/s/ Walter Shapero**
                                        **Walter Shapero**
                                        **United States Bankruptcy Judge**